**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Francisco Javier PRECIADO–FLORES, Defendant–Appellant.**

No. 99CA2533.

Colorado Court of Appeals, Div. I.

Oct. 10, 2002.

Certiorari Denied April 14, 2003.

§ 24–51–1105, C.R.S.2002.

Ken Salazar, Attorney General, Cheryl Hone, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Lisa Weisz, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge METZGER.

Defendant, Francisco Javier Preciado–Flores, appeals the judgment of conviction entered on a jury verdict finding him guilty of accessory to criminally negligent homicide. He also appeals his sentence. We affirm.

According to the evidence at trial, defendant, age nineteen, and an acquaintance, age sixteen, were alone in defendant's apartment. Late that afternoon, someone came to the apartment and shot the acquaintance, who later died.

Police initially suspected defendant of the killing and charged him with second degree murder. During interrogation, defendant first said the acquaintance had shot himself accidentally. Because of the wound's loca-

tion, police were unconvinced it was self-inflicted.

Defendant next said he was falling asleep when the gun went off and he did not know what had happened. Later, defendant said the gun went off during playful wrestling.

However, ballistics tests showed that the bullet taken from the victim's body did not match the gun found in defendant's apartment. Further tests were positive for gunshot residue on defendant's shirt but not on his hands.

These results led police to revise their theory of the crime. Believing defendant had been a witness to the shooting but was concealing the identity of the shooter, the prosecutor reduced the charge to accessory to second degree murder. A jury convicted defendant of the lesser offense of accessory to criminally negligent homicide. He was sentenced to six years in the Department of Corrections.

I.

Defendant contends the trial court erred in denying his motion to suppress statements he made while in police custody. We disagree.

A.

■ First, we reject the contention of defendant, a Mexican citizen, that his custodial statements must be suppressed because they were made in violation of his rights under the Vienna Convention to contact his consulate before being interrogated.

Both Mexico and the United States are signatories to the Vienna Convention on Consular Relations, Apr. 24, 1963, 21 U.S.T. 71, 34 U.N.T.S. 262. Article 36 of the Convention mandates, in part, "the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State" of the detention of one of its citizens upon his or her request, and that "said authorities shall inform the person concerned without delay of his rights" to communicate with officials and receive consular aid.

It is not entirely clear whether the Vienna Convention creates a privately enforceable right. The Supreme Court has said the treaty "arguably" creates an individual right to judicial enforcement. *Breard v. Greene,* 523 U.S. 371, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998); *see also United States v. Minjares–Alvarez,* 264 F.3d 980 (10th Cir.2001); *United States v. Lombera–Camorlinga,* 206 F.3d 882 (9th Cir.2000). The state courts of Colorado have not decided the issue.

Those courts that recognize a possible private right generally have held that the defendant must show prejudice. *See, e.g., Breard v. Greene, supra* (suggesting that, absent an effect on the trial, violation of the Vienna Convention will not warrant reversal); *United States v. Nai Fook Li,* 206 F.3d 56, 78 (1st Cir.2000)(an individual cannot raise Article 36 violations as a defense to criminal prosecution); *United States v. Jimenez–Nava,* 243 F.3d 192 (5th Cir.2001)(application of the exclusionary rule in a criminal case does not further the purpose of Article 36); *United States v. Duarte–Acero,* 296 F.3d 1277 (11th Cir.2002); *United States v. Bustos De La Pava,* 268 F.3d 157 (2nd Cir.2001); and *United States v. Emuegbunam,* 268 F.3d 377 (6th Cir.2001)(no right under Article 36 to have evidence excluded or an indictment dismissed in a criminal prosecution); *United States v. Chaparro–Alcantara,* 226 F.3d 616 (7th Cir. 2000); and *United States v. Pagan,* 196 F.3d 884 (7th Cir.1999)(mistrial properly denied where the defendant did not show how notice of Article 36 rights would have influenced evidence presented to jury). *See generally* Ann K. Wooster, Annotation, *Construction and Application of Vienna Convention on Consular Relations (VCCR), Requiring that Foreign Consulate be Notified When One of its Nationals is Arrested,* 175 A.L.R. Fed. 243 (2002).

■ To establish prejudice, a defendant must show (1) he or she did not know of the right to contact a consul or official; (2) he or she would have taken advantage of the right had he or she known of it; and (3) the contact likely would have resulted in assistance to the defendant. *United States v. Esparza–Ponce,* 7 F.Supp.2d 1084 (S.D.Cal. 1998).

■ The exclusionary rule deters only constitutional violations, not statutory or treaty violations. *United States v. Blue,* 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966); *see also People v. Martinez,* 898 P.2d 28 (Colo.1995). No other signatory to the Vienna Convention requires suppression of evidence as a remedy for violations, and the United States Department of State has concluded suppression is not an appropriate remedy. *See United States v. Lombera–Camorlinga, supra.* Other courts have held that the right to contact a consul does not rise to the level of a constitutional right. *See, e.g., Murphy v. Netherland,* 116 F.3d 97 (4th Cir.1997).

Defendant is a Mexican citizen and resident alien in the United States. His right under the Vienna Convention to have had the Mexican Consulate notified upon his arrest is beyond doubt. However, he was taken into custody after 6:00 p.m. on the day of the shooting and was not informed he had such a right. Detectives did not notify the Consulate until the second day following the shooting.

Finding that defendant had suffered no prejudice, the trial court denied his motion to suppress his custodial statements that were made before the Mexican Consul was notified of his arrest. The court reasoned that, because defendant knowingly, intelligently, and voluntarily waived his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the presence of a consular officer would not have affected the outcome. The record supports this determination, and we will not disturb it on review.

■ Nevertheless, defendant argues the police have no incentive to follow the Vienna Convention if courts will not enforce it, and he asserts the United States must give foreign nationals the same respect and due process it expects its own nationals to receive abroad. These and related issues have been a matter of great concern to the State Department. *See, e.g.,* Linda Jane Springrose, Note, *Strangers in a Strange Land: The Rights of Non–Citizens Under Article 36 of the Vienna Convention on Consular Relations,* 14 Geo. Immigr. L.J. 185 (1999). How-

ever, we follow the lead of the federal circuit courts and conclude that suppression is not the proper remedy for a violation of the Vienna Convention rights of a foreign national.

### B.

■ We next reject defendant's contention that he did not make a knowing and voluntary waiver of his *Miranda* rights.

Statements made during a defendant's custodial interrogation must be suppressed unless authorities advise the defendant of his or her rights and the prosecution proves by a preponderance of the evidence that the defendant made a knowing, intelligent, and voluntary waiver of those rights. *Miranda v. Arizona, supra; People v. Mejia–Mendoza,* 965 P.2d 777 (Colo.1998).

■ The question whether a waiver is voluntary, knowing, and intelligent involves two distinct facets. First, the waiver must be a voluntary act, which is the result of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must be knowing and intelligent, meaning the defendant must be aware of both the nature of the right and the consequences of the decision to waive it. *See People v. Mejia–Mendoza, supra,* 965 P.2d at 780.

■ The voluntariness of a statement is determined by evaluating the totality of the circumstances under which it was made. However, a statement is involuntary only if coercive governmental conduct played a significant role in obtaining it. *See People v. Miranda–Olivas,* 41 P.3d 658 (Colo.2001).

Defendant was arrested about 6:15 p.m. About 8:00 p.m., detectives began to interview him. He was read *Miranda* warnings, which were translated into Spanish for him, and he initialed a written *Miranda* form in English. About 8:30 p.m., he agreed to take a polygraph test, he was read his *Miranda* rights in Spanish again, and the polygraph test was explained to him. He signed another *Miranda* waiver form and a consent form for the test, both of which were translated into Spanish for him. He took the polygraph test about 9:00 p.m. He failed the test and was notified of the results about 10:30 p.m. Detectives told defendant the victim could not have been killed by a self-inflicted injury. Defendant then told detectives he had accidentally shot the victim during a playful wrestling match. The interview ended about 11:00 p.m.

These facts support the trial court's determination that defendant's waiver of his *Miranda* rights was knowing, voluntary, and intelligent. He received thorough advisements in Spanish at every stage, and there is no evidence of any coercive governmental conduct.

We reject defendant's assertion that the interpreter did not translate the *Miranda* advisement form into Spanish for him. Although the translator testified she did not remember whether she had translated the form, a detective testified that she did. As fact finder, the court was entitled to credit the testimony of the detective.

Likewise, we disagree with defendant's assertion that the different dialect of Spanish spoken by the translator limited his understanding. The record contains no evidence that the defendant did not understand the translation, and the translator testified she experienced virtually no difficulty.

■ Finally, we reject defendant's argument that, because he allegedly did not understand the word "waiver" in an advisement given by the court nine months after his arrest, his *Miranda* waiver was ineffective. There is no evidence the detective used the word "waiver" when advising defendant of his *Miranda* rights and asking if defendant would speak to detectives despite his right not to do so.

Because defendant's waiver of his *Miranda* rights was knowing, voluntary, and intelligent, the trial court properly admitted his statements into evidence.

### II.

■ Defendant maintains the trial court erred in denying his motion for a mistrial because the translator referred at trial to defendant's polygraph test. We disagree.

■ A mistrial is a drastic remedy, warranted only when no other remedy could ameliorate the prejudice. Because the trial court is in the best position to evaluate the circumstances, we will not overturn its ruling absent a gross abuse of discretion and prejudice to the defendant. *People v. Collins,* 730 P.2d 293 (Colo.1986). The mere possibility of prejudice does not warrant reversal. *People v. Gladney,* 194 Colo. 68, 570 P.2d 231 (1977).

Here, on the last day of trial the translator improperly referred to the polygraph test:

Q: Were there any words that he spoke that you did not understand?

A: It was at the end only when we did the polygraph. But at the beginning there was nothing there, really.

Defendant declined a curative instruction and moved for a mistrial. The trial court denied the motion, finding that the misstatement did not tell the jury defendant had failed the test and did not "send a message" to the jury that police officers had formed a belief defendant was lying based on the test results.

Defendant contends the reference to the polygraph test was prejudicial because the jury would have remembered the testimony of the detective that defendant had lied to police. Therefore, he argues the jury could infer he had failed the polygraph test.

This brief and isolated reference to the polygraph test does not rise to the level of prejudice necessary to declare a mistrial, and thus, the trial court did not abuse its discretion in denying the motion.

### III.

■ Defendant next contends he is entitled to a new trial because the trial court refused to instruct the jury on duress and to admit additional evidence of duress. We disagree.

### A.

Section 18–1–708, C.R.S.2002, defines the defense of duress:

A person may not be convicted of an offense, other than a class 1·felony, based upon conduct in which he engaged at the direction of another person because of the use or threatened use of unlawful force upon him or upon another person, which force or threatened use thereof a reasonable person in his situation would have been unable to resist.

■ To be entitled to an instruction on duress, a defendant must make a threshold showing of (1) an immediate threat of death or bodily injury; (2) a well-grounded fear the threat will be carried out; and (3) no reasonable opportunity to escape the threatened harm. *See Bailey v. People,* 630 P.2d 1062 (Colo.1981). Any threat must be more than mere speculation or a veiled threat of unspecified future harm. *People v. Trujillo,* 41 Colo.App. 223, 586 P.2d 235 (1978).

■ An instruction embodying the defendant's theory of the case must be given if there is any credible evidence to support it. *See People v. Lucas,* 992 P.2d 619 (Colo.App. 1999). The quantum of evidence necessary for a duress instruction is "some credible evidence," alternatively stated as a "scintilla of evidence." *See People v. Saavedra–Rodriguez,* 971 P.2d 223 (Colo.1998). Unless there is evidence of each element of duress, the trial court may properly disallow the defense as a matter of law and refuse to instruct the jury on duress. *See People v. Lucas, supra; see also United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980).

Defendant contended at trial he was not an accessory because he had acted under duress in concealing the identity of the killer. However, he did not show the existence of an immediate threat. A detective testified that witnesses to crimes become fearful for their own safety, the possibility of retribution against witnesses generally increases in proportion to the seriousness of the offense, and drug dealing and homicide are serious offenses. Although these facts might allow the inference that a threat existed, they did not show the threat was immediate as opposed to being a "veiled threat of unspecified future harm." *People v. Trujillo, supra.*

Second, defendant did not show he had a well-grounded fear any threat would be carried out. Counsel asserted that defendant feared the threat would be carried out, but

there was no evidence of a particular, immediate threat, and therefore no evidence that defendant's fear was well-grounded.

Finally, because defendant failed to present evidence of a particular, immediate threat, he did not show he had no reasonable means of escaping any threat.

Thus, the trial court did not err in rejecting defendant's duress instruction.

### B.

■ Next, we reject defendant's contention the trial court erred by excluding as hearsay additional evidence of duress.

■ Under the residual hearsay exception, a statement that would otherwise be excluded as hearsay may be allowed if, among other requirements, it is supported by circumstantial guarantees of trustworthiness. CRE 807; *see also People v. Fuller*, 788 P.2d 741 (Colo.1990). The proponent must establish circumstantial guarantees of trustworthiness by a preponderance of the evidence. *People v. Bowers*, 773 P.2d 1093 (Colo.App. 1988), *aff'd*, 801 P.2d 511 (Colo.1990).

Admission of evidence under the residual hearsay exception is within the sound discretion of the trial court, CRE 104(a), and we will overturn the court's decision only for an abuse of discretion. *See People v. Jensen*, 55 P.3d 135 (Colo.App.2001).

Here, defendant designated the victim's sister as a witness and asked the court to admit her testimony under CRE 807. The victim's sister had told a detective that someone had paid for her brother's trip to the United States to serve as a drug courier. She said a cousin who could verify this information would not cooperate with authorities because he was afraid of being killed. She named a person she believed had paid defendant to "take the rap" for killing her brother. Further, she told the detective that, at the victim's funeral in Mexico, a drug lord, his bodyguard, and a police officer were gunned down. An article from a Mexican newspaper supported her account of the "blood bath." She was afraid to cooperate openly with police and would not talk to the detective when other relatives were present. She said that,

because she was cooperating with authorities, her mother had received threats.

The trial court refused to admit this testimony because it did not have sufficient guarantees of trustworthiness. We cannot say the court abused its discretion.

The victim's sister had gathered most of her information from talking to other people. She had no independent knowledge of her brother's involvement with drugs, the reason for his trip to the United States, the circumstances surrounding his death, or the identity of his killer.

■ Moreover, the testimony would not have been sufficient to warrant an instruction on the defense of duress. While the victim's sister could have testified about her fear for her own safety following her brother's death, that would have had only a tenuous connection to defendant's duress defense. She could have testified to what she witnessed at her brother's funeral, but not about her speculative theories of the reasons for the shootings. Nor did the newspaper article explain why the shootings occurred. Further, because defendant's interrogation occurred approximately a week before the victim's funeral, the sister's testimony about the funeral and events thereafter would not indicate that defendant had no reasonable means of escaping any threat at the time he was questioned.

Thus, the trial court did not abuse its discretion in refusing to admit this evidence under CRE 807.

### IV.

■ Defendant contends his conviction should be reversed because the jury instruction on the crime of accessory did not define the element of "rendered assistance." We disagree.

■ A jury instruction that omits the definition of an element of a crime may be harmless or plain error. *Griego v. People*, 19 P.3d 1 (Colo.2001).

The inquiry ... "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually ren-

dered in this trial was surely unattributable to the error."

*Blecha v. People,* 962 P.2d 931, 942 (Colo. 1998).

According to § 18–8–105(2)(d), C.R.S.2002, a person renders assistance when he or she "[b]y force, intimidation, or deception, obstruct[s] anyone in the performance of any act which might aid in the discovery, detection, apprehension, prosecution, conviction, or punishment of [the principal]."

Here, the court did not define "rendered assistance," and defendant did not object to this omission. However, the verdict form offered the jury two options to find defendant guilty of accessory to criminally negligent homicide:

a. Concealing or hiding material evidence; or

b. Making an intentionally false statement which was specifically designed to aid or hinder the detection of the person who shot and killed [the victim].

The jury selected the second option, which corresponds to the statutory definition of rendering assistance by deception to obstruct the detection of the principal. Because the verdict form supplied the missing definition, the omission in the instructions was cured. *See People v. Longoria,* 862 P.2d 266, 270 n. 7 (Colo.1993).

Defendant nonetheless argues the verdict form was not sufficient to cure the defect because it did not require a determination that he had been successful in obstructing the investigation.

■ However, § 18–8–105(2)(d) requires only that a defendant "obstruct anyone in the performance of any act which *might aid*" in detection of the principal. The statute does not require that the act be successful, and defendant has not cited any authority to support his argument.

Accordingly, because the omission of the definition from the instructions was cured by the verdict form, the jury's verdict was surely not attributable to the defect, and the error was harmless.

## V.

■ Defendant next contends his conviction should be vacated because the evidence was not sufficient to support it. We disagree.

Evidence is sufficient when, viewed as a whole and in the light most favorable to the prosecution, it is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty beyond a reasonable doubt. The prosecution must be given the benefit of every reasonable inference. Witness credibility is the province of the jury. *See People v. Gonzales,* 666 P.2d 123 (Colo.1983).

Here, at trial, detectives testified they believed defendant when he said he had been alone in the apartment with the victim and later when he said he had killed the victim. Because of these statements from their only witness, police did not look for a third person for several months, even though the first forty-eight hours of an investigation are critical. This testimony is sufficient to support a finding that defendant concealed information that might have aided police. *See* § 18–8–105(2)(d).

■ Defendant's false statements also give rise to the reasonable inference that he intended to assist the killer. The prosecution was not required to establish defendant's motive. *See* § 18–8–105(1), C.R.S.2002. A defendant's conduct and the surrounding circumstances may permit a reasonable inference of intent. *People v. Taylor,* 655 P.2d 382 (Colo.1982).

Consequently, the evidence and its reasonable inferences are sufficient to support the conviction.

## VI.

■ Defendant contends his conviction must be reversed because the trial court permitted the jury to deliberate during the course of the trial. While we agree that error occurred, we conclude that reversal is not warranted.

■ Where, as here, the defendant did not object at trial, we review for plain error.

Plain error is obvious and grave error that so undermines the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *See People v. Garcia,* 28 P.3d 340 (Colo.2001).

A conviction will not be overturned for juror misconduct unless the defendant affirmatively establishes that the misconduct occurred and that he or she suffered actual prejudice as a result. *See People v. Renaud,* 942 P.2d 1253 (Colo.App.1996).

Traditional notions of fairness have required an instruction to jurors that they may not discuss a case during trial recesses. This helps to protect a defendant's constitutional right to a fair trial, and promotes a defendant's due process right to place the burden on the government to prove its case beyond a reasonable doubt. *See ABA Standards for Criminal Justice, Trial by Jury Standards,* Standard 415–4.1(a) & commentary (3d ed.1996). Several jurisdictions have confronted the issue of judicially instructed predeliberation jurors discussions. The consensus is that, in criminal cases, it is improper for jurors to discuss the evidence before completion of the presentation of evidence and receipt of the trial court's instructions and closing argument of counsel. The reasons given include: (1) the jury system is meant to involve decisionmaking as a collective, deliberative process, and premature deliberations among individual jurors may thwart that goal, *see Commonwealth v. Kerpan,* 508 Pa. 418, 498 A.2d 829 (1985); (2) a juror who expresses views in the presence of other jurors is likely to continue to adhere to that opinion and therefore to approach the case with less than a fully open mind, *see Winebrenner v. United States,* 147 F.2d 322 (8th Cir.1945); *see also State v. Joyner,* 289 S.C. 436, 346 S.E.2d 711 (1986); (3) premature deliberations may occur before a defendant has a chance to present all of his or her evidence and may, therefore, be unfavorable to defendant in violation of the right to a fair and impartial trial, *see Commonwealth v. Kerpan, supra;* (4) premature conclusions about a case effectively shift the burden to the defendant to change the opinion thus formed, *see Winebrenner v. United States, supra;* and (5) jurors who engage in predeliberation do so in a vacuum, without benefit of the court's instructions. *See Winebrenner v. United States, supra.*

Colorado's Rules of Criminal Procedure do not expressly forbid a trial court from allowing jurors to predeliberate. Crim. P. 24(f). However, the pattern instructions include an admonition to jurors not to "discuss the case either among yourselves or with anyone else during the course of the trial." CJI Crim. 1:04 (1993).

Here, the trial court instructed the jury before opening statements, "When you are all in the jury room together, and there is no one else present, you may discuss the case." Then, at the end of the first day, the court instructed the jury, "Again, don't discuss this case with your spouse or your significant other or any other persons, because we want your judgment, not theirs. You may discuss it amongst yourselves as jurors while you're in the jury room, but don't discuss it with anybody else." Finally, at the end of the second day of trial, the court instructed the jury, "Again, I have to admonish you to please do not discuss this case with other persons in your household. You can discuss it with other jury members while you're in the jury room, but do not discuss it with anyone else." The court also instructed the jury, "[Y]ou should keep an open mind throughout the trial and you should reach a decision only during your final deliberations." Defendant did not object to any of these instructions.

In 1999, selected Colorado judicial districts engaged in an innovative jury reform program. The program changed several of the procedures by which traditional juries operate. Jurors were allowed to take notes and use juror notebooks and, in civil cases only, they were allowed to ask questions and to engage in predeliberation discussions. While both the results of the reform program and responses to the pilot project were generally positive, predeliberation discussions were not allowed in criminal cases in Colorado. R.L. Kourlis and J. Leopold, *Colorado Jury Reform,* 29 Colo. Law. 21 (Feb.2000). Thus, the trial court's instructions were error.

Nevertheless, reversal of defendant's conviction is not warranted. The record does not

show defendant's trial was conducted unfairly. *See United States v. Dean*, 76 F.3d 329 (10th Cir.1996). Jurors were instructed to keep an open mind throughout the proceedings, and there is no indication that they reached a conclusion before the case was submitted formally for deliberation.

Moreover, the record does not show that any predeliberation occurred or affected the outcome of the trial. Additionally, because of the overwhelming evidence of defendant's guilt, the reliability of his judgment of conviction is not in doubt.

Thus, the court's erroneous instructions allowing predeliberation here did not deny defendant a fair trial.

## VII.

■ We also reject defendant's contention that his conviction of the felony of accessory to criminally negligent homicide violated his right to equal protection because the misdemeanor of false reporting punishes the same conduct and imposes a lighter penalty.

■ The General Assembly has the prerogative to establish the penalties for particular criminal offenses. *See Smith v. People*, 852 P.2d 420 (Colo.1993). Equal protection requires that statutory classifications be based on differences that are both real in fact and reasonably related to the purposes of criminal legislation. *See People v. Finnessey*, 747 P.2d 673 (Colo.1987). When two criminal statutes prescribe different penalties for identical conduct, a person convicted and sentenced under the harsher statute has been denied equal protection of the law. *See People v. Oliver*, 745 P.2d 222 (Colo.1987).

Because this issue involves statutory interpretation and therefore presents questions of law, our review is de novo. *See United Airlines, Inc. v. Industrial Claim Appeals Office*, 993 P.2d 1152 (Colo.2000).

A person commits the crime of false reporting when he or she "makes a report ... to law enforcement authorities pretending to furnish information relating to an offense ... when he or she knows ... that the information is false." Section 18–8–111(1)(c), C.R.S. 2002.

To commit the offense of accessory to a crime, a person must both know the information is false and intend that the false information help the principal. Section 18–8–105, C.R.S.2002.

Punishing the offense of accessory to a crime more severely than the offense of false reporting does not violate equal protection, because the offenses are distinguishable. The level of intent required for commission of a crime often differentiates greater from lesser offenses, and here the levels of intent for accessory and for false reporting are markedly distinct. Thus, the difference between these crimes is real in fact.

Additionally, the intent to help a criminal avoid detection not only is more culpable than simply providing false information, but also creates greater social harm. A deliberate attempt to thwart law enforcement is more destructive than conduct not designed to do so. Therefore, the statutory scheme is reasonably related to the purposes of criminal legislation.

Finally, contrary to defendant's argument, the inference that he intended to assist the principal was properly drawn from his false statements. Because his statements served no apparent purpose other than to help the killer, it was a fair inference he intended to do so.

## VIII.

■ Defendant contends he did not knowingly waive defense counsel's conflict of interest at sentencing and the trial court erred in ruling otherwise. We disagree.

Absent an abuse of discretion, the trial court's determination that a waiver was valid will not be disturbed on review. *See People ex rel. Peters v. District Court*, 951 P.2d 926 (Colo.1998).

The right to effective assistance of counsel includes the right to conflict-free counsel. *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). An attorney has a conflict of interest, as relevant here, if the representation of a client "may be materially limited ... by the lawyer's own interests." Colo. RPC 1.7(b).

■ A defendant may waive the right to conflict-free counsel, Colo. RPC 1.7(a), (b), and both parties here agree that defense counsel's conflict of interest was waivable. A waiver is valid when (1) the defendant is aware of the conflict and its likely effect on the attorney's ability to render effective assistance, and (2) the waiver is voluntary, knowing, and intelligent. *See Tyson v. District Court*, 891 P.2d 984 (Colo.1995). A waiver is voluntary, knowing, and intelligent when the defendant is aware of and understands the various risks and pitfalls, has the rational capacity to make a decision on the basis of this information, and states clearly and unequivocally a desire to nevertheless hazard those dangers. *See People v. Castro*, 657 P.2d 932 (Colo.1983).

■ The record must affirmatively show the trial court fully explained the nature of the conflict and the difficulties defense counsel faced in effective advocacy for the defendant. *See People v. Martinez*, 869 P.2d 519 (Colo.1994). However, a waiver is not knowing and intelligent where a defendant gives merely pro forma answers to the court's pro forma questions. The trial court should elicit the defendant's narrative response on the record, stating his or her understanding of the right to conflict-free representation and a description of the conflict at issue. *See People v. Edebohls*, 944 P.2d 552 (Colo.App.1996).

■ A waiver is valid even though the defendant will receive representation less effective than that provided by conflict-free counsel. *See Rodriguez v. District Court*, 719 P.2d 699 (Colo.1986).

Defendant's attorney began dating the prosecuting attorney after trial but before sentencing. He disclosed this conflict to the court at the beginning of defendant's sentencing hearing, and the court continued the case for a week on its own motion to allow him to discuss it with defendant. He did so, and defendant signed a written waiver. The deputy district attorney who represented the prosecution at sentencing was not the deputy who had participated in defendant's trial.

At the sentencing hearing, the trial court engaged in a lengthy colloquy with defendant about his waiver. The court asked defendant whether his attorney had discussed the conflict with him, and defendant said he had. The court explained, "[I]t doesn't look good and it may not be an absolute conflict, but it doesn't look good to have your lawyer involved in a romantic relationship with a woman that prosecuted you before you have been sentenced. Do you understand that?" Defendant answered, "Yes." The court went on to explain, "For example, the argument could be made that your lawyer isn't working as hard for you as he should because he is involved with the lawyer that prosecuted you.... And that's what I mean by conflict." Defendant answered through his interpreter, "Your Honor, I believe that he did work the way he should have." The court then asked if defendant understood his attorney might have a conflict and that the court would appoint a new lawyer at no cost. Defendant asked, "Your Honor, is it that you don't want my lawyer to represent me anymore?" The court answered that the lawyer could continue to represent defendant if the court was satisfied defendant understood he could have a conflict. Defendant answered, "No, Your Honor I would prefer to retain him." Later in the proceeding, the court cautioned defendant, "Do you understand that you won't be able to use this later on in the future as an excuse to come in and try to get a new trial?" Defendant answered, "Yes."

This exchange reveals more than pro forma answers to pro forma questions. *Cf. People v. Edebohls, supra.* Defendant acknowledged he was aware of the conflict and its ramifications and had discussed them with his attorney. There is nothing in the record to indicate defendant lacked the rational capacity to make a decision of this type. And, he stated clearly and unequivocally his desire to retain his attorney.

We reject defendant's argument the waiver was defective because at some points in this proceeding he allegedly did not completely understand the court's questions. In those instances, the court clarified the questions, and defendant then told the court he understood.

■ We also reject defendant's argument that the decision in *People v. Castro, supra*,

requires a different result. There, the supreme court held that a waiver is procedurally defective when the court does not ask defense counsel whether defendant has been advised about the right to conflict-free representation, the nature of the particular conflict, and the risks associated with further representation. While *Castro* contemplates disclosure by the attorney, followed by inquiry on the part of the court, it clearly holds that the dispositive determination is whether defendant effected a voluntary, knowing, and intelligent waiver. *People v. Castro, supra,* 657 P.2d at 946 n. 10.

Here, even though defense counsel did not advise the court he had discussed the matter thoroughly with defendant, defendant said he had fully discussed the matter with counsel. Moreover, although the record is clear that defendant signed a written waiver of counsel's conflict of interest, that document itself is not contained in the record. Thus, we must presume the information on the waiver would support the trial court's ruling. *See People v. Velarde,* 200 Colo. 374, 616 P.2d 104 (1980).

Consequently, we conclude that the trial court properly accepted defendant's waiver of the conflict. *See People v. Harlan,* 54 P.3d 871 (Colo.2002).

IX.

■ Defendant contends his sentence is excessive and based on improper considerations and inaccurate findings. We disagree.

Sentencing decisions rest within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion. *See People v. Leske,* 957 P.2d 1030 (Colo.1998).

■ The sentencing court must consider the nature and elements of the offense, the character and record of the defendant and potential for rehabilitation, all aggravating or mitigating circumstances, the development of respect for the law, the deterrence of crime, and the protection of the public. *See People v. Fuller,* 791 P.2d 702 (Colo.1990); *see also People v. Leske, supra.*

■ Where the court finds aggravating factors that are elements of the offense, it must relate those facts to the particular defendant and circumstances of the crime. *People v. Leske, supra.*

■ The court must state on the record the basic reasons for imposing the sentence, but need not make specific findings on each factor. *See People v. Fuller, supra; see also People v. Leske, supra.* It is sufficient that the record contain evidence to support the reasons for the sentence, a reasonable explanation of the sentence imposed, and information that permits the conclusion the sentencing court considered all essential factors. *See People v. Leske, supra.*

Accessory to criminally negligent homicide is a class five felony. Section 18–8–105(5), C.R.S.2002. The presumptive sentencing range is one to three years in Department of Corrections. Section 18–1.3–401(1)(a)(V)(A), C.R.S.2002. If aggravating factors are present, the court may impose a sentence that does not exceed twice the maximum sentence. Section 18–1.3–401(6), C.R.S.2002.

Here, the court sentenced defendant to the maximum in the aggravated range, six years.

We reject defendant's contention the sentence was excessive. The court found defendant knew or could describe the killer, but concealed that information and was therefore responsible for preventing police from apprehending the principal. It also noted the killing had "all of the earmarks of a drug ring" and rejected defendant's argument he acted out of fear. Although these aggravating factors are elements of the offense, the trial court properly related those facts to defendant and the circumstances of the crime. And, because the record supports these findings, we also reject defendant's contention to the contrary.

Moreover, there is no evidence the court did not properly consider the mitigating factors. Defendant was nineteen years old, held two jobs, had no criminal history, did not use drugs, seldom drank alcohol, had the support of his family in Colorado and Mexico, and, according to the presentence investigation report, "was a good candidate for probation." Defense counsel discussed many of

these factors in arguing that defendant should be sentenced to probation.

Finally, we reject defendant's contention the court impermissibly penalized him for having been convicted under subsection (e) of § 18–8–105(2) for concealing or destroying evidence, rather than under subsection (d) for obstructing by deception. The court's comparison of defendant's lies to police with the single act of hiding a gun does not indicate an erroneous application of the law, but was merely part of its explanation of the aggravating factors present here.

Thus, the court did not abuse its discretion in imposing the maximum sentence.

The judgment and sentence are affirmed.

Judge NEY and Judge TAUBMAN concur.