The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Rhoderick T. **FLOCKHART**, Defendant–Appellant.

No. 07CA0312.

Colorado Court of Appeals, Div. IV.

Dec. 24, 2009.

Rehearing Denied March 4, 2010.

---

John W. Suthers, Attorney General, Rebecca A. Adams, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROMÁN.

Defendant, Rhoderick T. Flockhart, appeals the judgment of conviction entered on a jury verdict finding him guilty of possession of marijuana and distribution of marijuana. Because the trial court erred by permitting the jury to engage in predeliberation discussions about the case, and we cannot conclude the error was harmless beyond a reasonable doubt, we vacate the judgment of conviction and remand for further proceedings consistent with this opinion.

## I. Background

Defendant was charged with distribution of marijuana and possession of eight ounces or more of marijuana. According to the People's evidence, defendant sold marijuana to an informant acting under the direction of a county drug task force. Following this sale, task force officers arrested defendant and searched his residence pursuant to a warrant. Finding no marijuana in the residence, the officers obtained an amended warrant allowing them to search the back room of the building adjacent to defendant's backyard, which was partially enclosed by the fence surrounding defendant's residence. Police discovered over nine pounds of marijuana in the back room, which defendant unsuccessfully moved to suppress.

Before beginning jury selection, the trial court told the attorneys that "the court allows the jury to discuss the case prior to the conclusion of the case, but will instruct them not to draw any conclusions about what the evidence shows." Defense counsel objected. Although the trial court did not rule on this objection, later the court advised the entire panel of prospective jurors of this policy and eventually instructed the impaneled jurors:

> Now, as I said earlier, you will be able to discuss the case as you go along. However, even though you'll hear in opening statements what the evidence is expected to show, you'll not have heard all the evidence until the last witness is finished. So don't draw any firm conclusions about what you've heard. Keep an open mind all the way through the trial and draw your conclusions only at the conclusion of the case.

During the three-day trial, the court repeatedly told the jury it was permitted to discuss the case.

The jury convicted defendant on both counts. On appeal, he asserts six errors by the trial court. Although we vacate and remand on the jury instruction issue, we must also address the defective information argument because it could require dismissal of the possession count. Further, we address additional alleged errors because of the possibility that retrial will be necessary.[1]

## II. Challenges for Cause in Open Court

■ Defendant contends the trial court committed reversible error by requiring him to argue his challenges for cause in the presence of the prospective jurors. While we agree that the trial court erred, we do not find that this error warrants reversal.

The following exchange took place between the court and defense counsel:

THE COURT: All right, pass for cause?

---

1. We decline to address defendant's assertion that the trial court erred by admitting testimony on redirect that defendant earned his living selling marijuana because it is not likely to recur on retrial.

[DEFENSE COUNSEL]: No. We have challenges for cause. You want to do these from the back?

THE COURT: No, on record here.

[DEFENSE COUNSEL]: In front of the jurors?

THE COURT: Yes.

[DEFENSE COUNSEL]: All right. We challenge [named jurors] for cause.

THE COURT: Go ahead and articulate those.

Defense counsel proceeded to argue the challenges for cause in the presence of all the prospective jurors, but never requested that he be allowed to make or argue the challenges outside the presence of the challenged jurors. The court questioned the challenged jurors until it was satisfied they could be fair and impartial, and then denied the challenges.[2]

■ Here, because defendant did not object at trial or challenge the jurors on the basis of bias arising from the procedure utilized, we review for plain error. Plain error describes those errors that "so undermine[ ] the fundamental fairness of the trial itself . . . as to cast serious doubt on the reliability of the judgment of conviction." *People v. Miller*, 113 P.3d 743, 750 (Colo.2005) (quoting *People v. Sepulveda*, 65 P.3d 1002, 1006 (Colo.2003)).

The propriety of hearing argument on challenges for cause in front of the prospective jurors is an issue of first impression in Colorado. There exists, however, a split of authority in other jurisdictions.

Several jurisdictions have determined that whether challenges for cause are made and argued in open court is a matter of discretion left to the trial court. *See, e.g., Wagner v. State*, 282 Ga. 149, 646 S.E.2d 676, 679 (2007); *State v. Hardin*, 498 N.W.2d 677,

681–82 (Iowa 1993); *State v. Biegenwald*, 106 N.J. 13, 524 A.2d 130, 136 (1987).

Conversely, the approach advocated by the American Bar Association requires the trial court to hear challenges for cause, and argument on those challenges, outside the presence of the prospective jurors. *See* American Bar Ass'n, Standards for Criminal Justice: Trial by Jury 15–2.7(a) (3d ed.1996).

The ABA commentary to Standard 15–2.7 explains that statements made by counsel in the course of a challenge may offend a challenged juror and might tend to bias that juror against the challenging counsel and his client.

Likewise, the Virginia Court of Appeals found that where the trial judge stated in a juror's presence that defense counsel was challenging him for cause and then heard the prosecution's response to the challenge in front of the juror, the procedure "created the possibility of bias in the mind of the juror against the defendant, where bias may not have previously existed." *Brooks v. Commonwealth*, 24 Va.App. 523, 484 S.E.2d 127, 130 (1997).

We agree with the view espoused by the ABA and the Virginia Court of Appeals. Accordingly, we hold that it is improper for the trial court to require challenges for cause, and subsequent argument, in the presence of potential jurors.

However, we do not find that it constituted plain error in this case because, like the New Jersey Supreme Court,

[w]e are not persuaded that every juror unsuccessfully challenged for cause is inevitably biased against the party asserting the challenge. Nor are we convinced that the peremptory challenge subsequently expended against the challenged juror would not have been asserted had the challenge

---

2. At one point, the trial court, while considering the challenges in open court, stated:

The false premise that was set up which is that they would have to vote at that point is in the court's opinion a trick question quite frankly and makes it impossible for a juror to answer. Following the lunch break, the trial court apologized in front of the prospective jurors for the comment he had made earlier:

I want to make a statement. I used the [term] "trick question" earlier. I didn't mean to offend [defense counsel]. It was inartfully put. I just meant to indicate it was a difficult question to answer and didn't mean to indicate that [defense counsel] is—you know attempting to mislead anyone. So my apologies, [defense counsel], if I left that impression.

for cause been advanced at side bar rather than in open court.

*Biegenwald,* 524 A.2d at 137.

Here, there is no evidence in the record supporting the assertion that the challenged jurors were biased by hearing the challenges for cause. Nor were the bases for the challenges so obviously inflammatory as to raise a presumption that bias resulted. *Cf. Wagner,* 646 S.E.2d at 679 (noting that matters such as *Batson* violations are better addressed outside presence of jurors).

Accordingly, although the trial court erred by hearing challenges for cause and argument in front of the prospective jurors, this was not plain error requiring reversal of defendant's conviction.

### III. Premature Deliberations

Defendant contends his conviction must be reversed because the trial court permitted the jury to discuss the case during the trial. We agree that error occurred and that under these circumstances vacation of the conviction is warranted.

■ In Colorado, the trial court errs in instructing jurors in criminal cases that they can deliberate before all the evidence is received. *See People v. Preciado–Flores,* 66 P.3d 155, 165–66 (Colo.App.2002) (such discussions are not allowed in criminal cases in Colorado); *People v. Baird,* 66 P.3d 183, 190–91 (Colo.App.2002) (same).

The division in *Preciado–Flores* explained the reasons that predeliberation implicates a defendant's rights to due process and fair trial by an impartial jury:

(1) the jury system is meant to involve decisionmaking as a collective, deliberative process, and premature deliberations among individual jurors may thwart that goal; (2) a juror who expresses views in the presence of other jurors is likely to continue to adhere to that opinion and therefore to approach the case with less than a fully open mind; (3) premature deliberations may occur before a defendant has a chance to present all of his or her evidence and may, therefore, be unfavorable to [the] defendant in violation of the right to a fair and impartial trial; (4) premature conclusions about a case effectively shift the burden to the defendant to change the opinion thus formed; and (5) jurors who engage in predeliberation do so in a vacuum, without benefit of the court's instructions.

66 P.3d at 166 (citations omitted).

■ We review predeliberation instructions as trial error, rather than structural error.[3]

### A. Constitutional Trial Error

■ Because defendant preserved the issue below, we review the error for harmlessness. The People contend the predeliberation instruction was a nonconstitutional error, requiring a simple harmless error analysis. Defendant contends the more stringent constitutional analysis requiring harmlessness beyond a reasonable doubt applies. *See People v. Allen,* 199 P.3d 33, 37 (Colo.App.2007). An error is harmless beyond a reasonable doubt only if "the guilty verdict actually rendered in this trial was surely unattributable to the error." *People v. Bass,* 155 P.3d 547, 551 (Colo.App.2006).

We conclude that instructing the jury that it may engage in predeliberation discussion of the case is constitutional error, requiring application of the harmless beyond a reasonable doubt standard.

■ The right to a fair trial by an impartial jury is one of the fundamental constitutional rights of a criminal defendant. *People v. Burnette,* 775 P.2d 583, 586 (Colo.1989);

---

**3.** We reject defendant's assertion that the predeliberation instruction should be analyzed as structural error because of CRE 606. "[O]nly those errors that pervasively prejudice the entire course of the proceedings, making harmless error analysis impossible and rendering the verdict in essence no verdict at all, are structural defects that mandate reversal." *People v. Lee,* 30 P.3d 686, 688 (Colo.App.2000). Although CRE 606 is often an obstacle to defendants asserting juror misconduct, instances of actual or potential juror misconduct are regularly evaluated for prejudice. *See, e.g., Harper v. People,* 817 P.2d 77, 80–81 (Colo.1991) (possible exposure to potentially prejudicial news article); *Wiser v. People,* 732 P.2d 1139, 1142–43 (Colo.1987) (effect of juror reference to extraneous information).

*see* U.S. Const. amends. VI & XIV. Several courts in other jurisdictions have recognized that an instruction permitting predeliberation impinges on this constitutional right. *See, e.g., Winebrenner v. United States,* 147 F.2d 322, 327 (8th Cir.1945); *State v. Washington,* 182 Conn. 419, 438 A.2d 1144, 1145–47 (1980); *State v. McLeskey,* 138 Idaho 691, 69 P.3d 111, 113–14 (2003); *Commonwealth v. Kerpan,* 508 Pa. 418, 498 A.2d 829, 832 (1985).

In the leading case, the United States Court of Appeals for the Eighth Circuit determined that a predeliberation instruction violated a defendant's right "under the Fifth and Sixth Amendments to the Constitution to a fair trial to an impartial jury," requiring reversal. *Winebrenner,* 147 F.2d at 327. The court expressed concern that the instruction effectively shifted the burden of proof to the defendant because a juror might form an opinion based on part of the evidence, which could then only be removed by further evidence. *Id.* The *Winebrenner* court was also concerned that a juror who expressed a predeliberation opinion to his or her fellow jurors would be disinclined thereafter to change his or her opinion.

> [T]he human mind is constituted so that what one himself publicly declares touching any controversy is much more potent in biasing his judgment and confirming his predilections than similar declarations which he may hear uttered by other persons. When most men commit themselves publicly to any fact, theory, or judgment they are [too] apt to stand by their own public declarations, in defiance of evidence. This pride of opinion and of consistency belongs to human nature.

*Id.* at 328 (citation omitted).

Likewise, the Connecticut Supreme Court relied upon a defendant's constitutional right to trial by an impartial jury to declare a predeliberation instruction unconstitutional, requiring reversal unless the state could show harmlessness beyond a reasonable doubt. *Washington,* 438 A.2d at 1147–49. It

explained that, because the prosecution presents its case first, initial opinions would generally be unfavorable to the defendant. *Id.* at 1147–48. That court was also concerned that once a juror expressed an opinion to his fellow jurors, "the die may well have been cast." *Id.* at 1148. Like the Eighth Circuit in *Winebrenner,* the Connecticut court explained that, after expressing an opinion to his fellow jurors, one would be naturally inclined to give special attention to evidence strengthening or confirming those views. *Id.* at 1147. *See also Kerpan,* 498 A.2d at 830–32 (an instruction allowing the jurors to discuss the case before all the evidence was presented violated the defendant's right to a fair and impartial jury, contrary to the Sixth Amendment); *McLeskey,* 69 P.3d at 113–14 (same).

Similarly, our supreme court has applied the constitutional harmless error standard where the trial court permitted an alternate juror to attend deliberations. *People v. Boulies,* 690 P.2d 1253, 1256 & n. 5 (Colo.1984). The *Boulies* court recognized that this situation "sufficiently imping[es] upon the defendant's constitutional right to a jury trial to create a presumption of prejudice that, if not rebutted, requires reversal." *Id.* at 1256; *see also Dunlap v. People,* 173 P.3d 1054, 1091 (Colo.2007) ("We apply the harmless beyond a reasonable doubt standard to the trial court's failure to question the jury [about possible exposure to prejudicial extraneous information] because Dunlap made a timely request that it do so.").

We consider these cases well reasoned and follow them here.[4]

Although a similar instruction was reviewed in *Preciado–Flores,* the issue was decided under a plain error analysis. *See* 66 P.3d at 165–66. In *Baird,* another division of this court reviewed a predeliberation instruction for harmlessness without indicating whether it had been asked to consider applying the constitutional standard. 66 P.3d at 191. To the extent *Baird* can be read as standing for the proposition that the noncon-

---

4. Recent reforms permit predeliberation in civil cases in Colorado. *See* CJI–Civ. 1:4 ("You may discuss the evidence during the trial, but only among yourselves and only in the jury room when all of you are present."); *see also Preciado–Flores,* 66 P.3d at 166 (acknowledging reform in civil cases but finding error where similar instruction was given in criminal trial).

stitutional harmless standard applies, we decline to follow it.

### B. Presumption of Prejudice from Predeliberation

The People and defendant also disagree on who has the burden of establishing prejudice arising from the predeliberation instruction. The People maintain defendant bears the burden of establishing prejudice. Defendant would have us presume prejudice. We conclude that a predeliberation instruction creates a rebuttable presumption of prejudice. *See State v. Castonguay*, 194 Conn. 416, 481 A.2d 56, 66–67 & n. 19 (1984) (if predeliberation discussion is presumed to have occurred, then "it is entirely reasonable to presume prejudice unless the state can disprove it").

In the absence of directly applicable Colorado authority, we note that other courts considering predeliberation instructions have reversed without requiring defendants to establish actual prejudice. *See Winebrenner*, 147 F.2d at 328–29; *Castonguay*, 481 A.2d at 67; *Washington*, 438 A.2d at 1149; *McLeskey*, 69 P.3d at 116 (finding that prejudice reasonably could have occurred, in light of the risks inherent in predeliberation); *People v. Blondia*, 69 Mich.App. 554, 245 N.W.2d 130, 132 (1976); *Kerpan*, 498 A.2d at 832.

When faced with the same issue, the Supreme Court of Connecticut determined that, because the error of giving predeliberation instructions is of constitutional magnitude, the defendant was entitled to a new trial unless the state could show that the error was harmless beyond a reasonable doubt. *Washington*, 438 A.2d at 1149. We agree with this reasoning and conclude that predeliberation instructions give rise to a rebuttable presumption of prejudice.

### C. Harmlessness Beyond a Reasonable Doubt

The burden to establish harmlessness of preserved constitutional error rests on the People. *See Golob v. People*, 180 P.3d 1006, 1013 (Colo.2008). Here, the People assert three reasons why the error was harmless:

(1) there was no evidence that the jury deliberated or reached a conclusion before formal deliberations, (2) the jury was instructed not to form a final opinion about the case until formal deliberations, and (3) there was overwhelming evidence of defendant's guilt. We conclude that the People have failed to meet their burden of showing the erroneous predeliberation instruction was harmless beyond a reasonable doubt.

#### 1. Establishing That No Predeliberation Occurred

The People first contend there is no evidence that predeliberation occurred. This position misconstrues their burden.

The predeliberation instruction is permissive in allowing, but not requiring, the jury to engage in discussion throughout the course of the trial. In considering the effect of this instruction, we find guidance in our supreme court's treatment of instructions that improperly permit the presence of an alternate juror at deliberations. Recognizing that the alternate juror in deliberations instruction was permissive rather than mandatory, the supreme court required the defendant to make a prima facie showing that the alternate was present before shifting the burden to the People to prove by a preponderance of the evidence that the alternate was not present. *Boulies*, 690 P.2d at 1255–56 & n. 5.

Similarly, we conclude that where the court gives erroneous instructions inviting jury predeliberation, a defendant who preserves his objection to such instructions is required to make a prima facie showing of predeliberation before the burden shifts to the People to demonstrate that predeliberation did not occur. A defendant makes a prima facie showing of predeliberation if the record reveals that (1) the predeliberation instruction was given, without any conflicting instructions prohibiting predeliberation,[5] and (2) the jury had an opportunity to predeliberate. *Cf. People v. Monroe*, 85 Mich.App. 110, 270 N.W.2d 655, 657 n. 2 (1978) (presumption of predeliberation where instruction and op-

---

5. We note that under this test the defendant in *Baird* would not meet the first element of a prima facie showing because there the record was replete with conflicting instructions. 66 P.3d at 191.

portunity); *see also Blondia,* 245 N.W.2d at 132 ("We assume that having been invited to do so, some jurors did discuss testimony during the course of this 11–day trial.").

Here, the record establishes a prima facie showing of predeliberation. The predeliberation instruction was given several times, without conflicting instructions, and the jury had multiple opportunities for predeliberation during the three-day trial. The People are thus required to rebut the prima facie case by establishing by a preponderance of the evidence that predeliberation did not occur in this case. *See Boulies,* 690 P.2d at 1256 n. 5; *Castonguay,* 481 A.2d at 68. However, the People have not pointed to any evidence that overcomes the predeliberation presumption. Thus, we proceed to analyze whether the prejudicial effect of the instruction was mitigated.

### 2. Mitigation of Prejudicial Effect of Predeliberation Instruction

When analyzing prejudice from predeliberation instructions, courts consider the mitigating effect of additional jury instructions. *See, e.g., United States v. Lemus,* 542 F.2d 222, 224 (4th Cir.1976); *Preciado–Flores,* 66 P.3d at 166.

Here, the People point out that the jurors in this case were instructed to keep open minds and not reach any conclusions until after the case was formally submitted for deliberation.

However, additional jury instructions do not address all of the concerns about predeliberation. Instructions such as those identified by the People, in particular, do little to address the staying power of a juror's expressed opinion and the fact that the prosecution's evidence, unfavorable to the defendant, is heard by the jury first. Because these important concerns are not addressed, the additional instructions do not render the error harmless beyond a reasonable doubt. *See Winebrenner,* 147 F.2d at 327–28; *Washington,* 438 A.2d at 1148; *McLeskey,* 69 P.3d at 113–14; *Blondia,* 245 N.W.2d at 131–32; *Kerpan,* 498 A.2d at 832.

### 3. Lack of Overwhelming Evidence

Finally, contrary to the People's assertion, we conclude that the evidence of defendant's guilt in this case was not overwhelming.

The distribution of marijuana charge was based on a controlled buy from defendant by an informant, who agreed to purchase marijuana and participate in defendant's prosecution in exchange for a plea agreement on unrelated charges. Although the informant's testimony was corroborated by the controlled buy money found in defendant's possession, the informant admitted that he was indebted to defendant at the time of the controlled buy for that exact amount of money. Further, although the informant testified defendant had retrieved marijuana in the bedroom, police found no marijuana in the bedroom or anywhere in defendant's residence.

Instead, the nine pounds of marijuana giving rise to the possession charge were found in the back room of the building adjacent to defendant's residence. Although the informant testified to defendant's possession of that marijuana, there was evidence that the only connection defendant had to the back room was that he occasionally attended poker games there. Thus, on this record, we cannot conclude that the error in this case was harmless beyond a reasonable doubt.

Nevertheless, because the trial court never reconsidered its decision to allow predeliberation, the People had no reason to make a record on harmlessness. Hence, on remand, the People should be given the opportunity to present evidence that the error was harmless beyond a reasonable doubt. Evidence regarding the jury's deliberations must be consistent with the requirements of CRE 606. *See Boulies,* 690 P.2d at 1256 n. 5; *see also Castonguay,* 481 A.2d at 68 (discussing permissible scope of evidentiary hearing on harmless error in light of prohibition against probing into jurors' mental processes).

If the People meet their burden, defendant's conviction will be reinstated, subject to defendant's right to appeal that determination. But if the People are unsuccessful, defendant is entitled to a new trial.

### IV. Sufficiency of Information

■ Defendant contends that the court lacked jurisdiction over count II of the information, the possession charge, because the information failed to describe an offense under the Criminal Code. We disagree.

We review de novo the sufficiency of a charge in an information. *People v. Melillo*, 25 P.3d 769, 777 (Colo.2001). A jurisdictional challenge to the information need not have been preserved for review. Crim. P. 12(b)(2); *People v. Madison*, 176 P.3d 793, 803 (Colo.App.2007).

■ When an information satisfies the specific requirements laid out in § 16–5–202(1), C.R.S.2009, and Crim. P. 7(b)(2), particularly "[t]hat the offense charged is set forth with such degree of certainty that the court may pronounce judgment upon a conviction," it invokes the jurisdiction of the court. *People v. Williams*, 984 P.2d 56, 60 (Colo.1999). The constitutional interests underlying these jurisdictional requirements are that the defendant (1) is provided with notice sufficient to permit preparation of an adequate defense and (2) is protected from further prosecution for the same offense. *Id.*

"An information may be filed using the language of the statute defining the offense...." § 16–5–202(3), C.R.S.2009. Count II of the information against defendant provided:

> That on or about the 22nd day of March, 2006, in the County of Chaffee and State of Colorado, Rhoderick T. Flockhart unlawfully and feloniously possessed eight ounces or more of marihuana; against the peace and dignity of the People of the State of Colorado and contrary to the form of the statute in such case made and provided and in particular in violation of CRS 18–18–406(4)(b)(I).

■ Section 18–18–406(4)(b)(I), C.R.S. 2009, provides that "[a]ny person who possesses eight ounces or more of marihuana ... commits ... [a] class 5 felony." Thus, the information tracks the statutory language and provides surrounding factual details.

> It is generally sufficient that an indictment [or information] set forth the offense in the words of the statute itself, as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished."

*Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612, 26 L.Ed. 1135 (1881)).

Nevertheless, defendant asserts that because the offense of possession of marijuana requires proof of knowing possession, *see People v. Bennett*, 183 Colo. 125, 132, 515 P.2d 466, 470 (1973), this is an essential element of the offense. According to defendant, lacking this element, the information fails to set forth an offense under the Criminal Code and thus does not invoke the jurisdiction of the court.

■ However, "[i]t is not necessary that an information include every element of the offense that must be proved at trial." *People v. Russell*, 36 P.3d 92, 96 (Colo.App.2001); *see also People v. Ingersoll*, 181 Colo. 1, 3, 506 P.2d 364, 365 (1973) (although specific intent must be proved at trial, it need not be alleged in the information).

Further, defendant has alleged neither that the information failed to provide sufficient notice for trial preparation nor that it failed to protect him from further prosecution for the same offense. *Compare People v. Tucker*, 631 P.2d 162, 163–64 (Colo.1981) (embezzlement indictment insufficient for failing to specify how alleged embezzlement was accomplished where numerous methods possible), *with Russell*, 36 P.3d at 96 (information failing to specify type of first degree murder allegedly attempted not substantially defective where defendant had adequate notice of alleged type based on factual allegations in information in conjunction with fact that attempted felony murder is not a cognizable crime).

We conclude the information provided sufficient notice for trial preparation and is adequate to bar further prosecution for the same offense.

Accordingly, the information is sufficient to vest jurisdiction over the charged offense, possession of marijuana, in the court.

## V. Denial of Motion to Recuse

■ Defendant claims the trial judge erred in refusing to recuse himself. We disagree.

■ We review a trial court's ruling on a motion to recuse de novo. *People v. Julien,* 47 P.3d 1194, 1197 (Colo.2002). A judge is not qualified to hear a case if he "is in any way interested or prejudiced with respect to the case, the parties, or counsel." § 16–6–201(1)(d), C.R.S.2009. Further, a judge should disqualify himself "in a proceeding in which the judge's impartiality might reasonably be questioned." C.J.C. 3(C)(1). Thus, a judge should recuse himself whether bias is actual or merely apparent. *Wilkerson v. District Court,* 925 P.2d 1373, 1376 (Colo. 1996).

However, the judge has a duty to sit on a case unless a reasonable person could infer from the facts alleged in the motion and supporting affidavits that the judge is actually or apparently prejudiced or biased against a party to the litigation. *People v. Owens,* 219 P.3d 379 (Colo.App.2009). Mere "[s]uspicion, surmise, speculation, rationalization, conjecture, [or] innuendo" is insufficient to form a basis for disqualification. *Carr v. Barnes,* 196 Colo. 70, 73, 580 P.2d 803, 805 (1978) (quoting *Walker v. People,* 126 Colo. 135, 148, 248 P.2d 287, 295 (1952)).

Prior to trial, defendant moved for the trial judge to recuse himself because the judge had prosecuted defendant for similar charges seven years earlier when the judge was a deputy district attorney. That case had ended in dismissal following defendant's successful motion to suppress. Defendant argues that the circumstances created a reasonable doubt as to whether an appearance of impropriety existed, specifically because:

(1) the charges in the two cases were similar;

(2) the prior case was relatively recent; and

(3) the prior case was resolved unfavorably to the current judge's former client, the People.

Our supreme court in *People v. Julien* held that a trial judge's recent employment as a district attorney did not automatically require the judge's disqualification from a criminal matter. 47 P.3d at 1196. Although the judge in that case had been employed with the district attorney at the inception of the case, the supreme court held that, consistent with the majority rule on the issue, disqualification was required only if the judge had acquired personal knowledge of disputed evidentiary facts concerning the proceeding, had supervised the prosecuting attorneys, or had some role in the investigation, preparation, or presentation of the case. *Id.* at 1197–98. Focusing on the judge's relationship to the specific case before him, the supreme court expressed concern over disqualifying on technical grounds the "[m]any trial and appellate judges [who] have spent a portion of their careers working for government agencies." *Id.* at 1199. Thus, in *Julien,* although the trial judge had been employed by the district attorney's office at the inception of the case against the defendant, the supreme court did not find this indicative of actual or apparent bias.

Here, defendant was prosecuted by the trial judge on a factually distinct charge seven years earlier. However, the trial judge had no knowledge of evidentiary facts concerning the current proceeding, and no connection at all to the investigation, preparation, and presentation of the case. Therefore, we conclude that the trial judge was not required to recuse himself merely because he had prosecuted defendant in a different case. *See, e.g., United States ex rel. Fletcher v. Maroney,* 280 F.Supp. 277, 279 (W.D.Pa.1968) ("The fact that the Judge, when District Attorney, had previously prosecuted [defendant] on a charge of murder, which trial resulted in his acquittal, is not, standing alone, a fact requiring disqualification.").

Because the facts alleged would not raise a reasonable question about the trial judge's impartiality "in the mind of an observer who is well-informed, thoughtful, and objective,"

*Owens,* 219 P.3d at 389, the trial court did not err in refusing to grant defendant's motion to recuse.

## VI. Denial of Suppression Motion

■ Defendant contends the trial court erred in failing to suppress the evidence found in a search of the building adjacent to his residence. We agree with the trial court that defendant lacked standing to challenge the search.

When reviewing a trial court's suppression ruling, we defer to the trial court's findings of fact, if supported by competent evidence in the record, and we review its conclusions of law de novo. *People v. Kirk,* 103 P.3d 918, 921 (Colo.2005).

■ In order to challenge the legitimacy of a government search, a defendant must first demonstrate a legitimate expectation of privacy in the area searched or the property seized. *Rakas v. Illinois,* 439 U.S. 128, 148–49, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *People v. Galvadon,* 103 P.3d 923, 925 (Colo.2005). A legitimate expectation of privacy exists when an individual has exhibited a subjective expectation of privacy in the particular place, and society recognizes that expectation as reasonable. *Hoffman v. People,* 780 P.2d 471, 474 (Colo.1989). In assessing an expectation of privacy, the courts consider "whether the defendant demonstrates a sufficient connection to the areas searched or the items seized based on the totality of the circumstances." *People v. Curtis,* 959 P.2d 434, 437 (Colo.1998). One factor to be considered is "whether the defendant has a possessory or proprietary interest in the subject of the search." *Id.*

Following a hearing and briefing on defendant's motion to suppress, the trial court issued findings and an order denying the motion. The trial court concluded that defendant lacked standing to contest the search because he had no reasonable expectation of privacy in the building searched. Specifically, the trial court found that:

- defendant did not own, occupy, or work in the building;
- although a portion of the building (the back room) extended inside a fence en-closing defendant's residence, that room was not part of his residence;
- defendant had no possessory or proprietary interest in the building; and
- defendant was, at most, an occasional visitor to the building.

The trial court concluded based on these findings that defendant had no meaningful connection with, and no expectation of privacy in, the building.

The trial court's findings of fact are all supported by competent evidence in the record. There was testimony that defendant did not own, rent, or occupy the building, and that he had never been an employee of the business located in the building. There was further testimony that the business owner, and not defendant, used the space for personal storage, and that nothing recovered in the search of the area indicated ownership by defendant. It was established that, while the back room was accessible through a door in defendant's back yard, it was also accessible through a door to the street and through the business portion of the building. Further, there was evidence that defendant's use of the back room consisted primarily of participating in card games, that other card players had open access to the back room, and that the business owner usually left the doors to the back room unlocked.

In considering a suppression motion, it is the province of the trial court to assess the credibility of witnesses and to weigh the evidence. *People v. Hammas,* 141 P.3d 966, 969 (Colo.App.2006). Because the trial court's factual findings are supported by the record, we uphold the trial court's ruling that defendant lacked standing to challenge the search. We need not address defendant's other challenges to the validity of the search.

The judgment is vacated, and the case is remanded to the trial court for a hearing on the predeliberation issue and further proceedings consistent with this opinion.

Judge WEBB concurs.

Judge BERNARD concurs in part and dissents in part.

Judge BERNARD concurring in part and dissenting in part.

I agree with the majority's conclusions except for Part III. There, the majority determines that the trial court's instruction authorizing jurors to discuss the evidence during the trial was constitutional error, which requires that defendant's conviction be reversed. I disagree with this holding because, based on significant, persuasive, and relevant social science research, I do not believe that allowing predeliberation discussions prejudices a defendant's right to a fair and impartial jury under the Sixth Amendment. Therefore, I respectfully dissent from the majority's decision to vacate defendant's conviction, and to remand for further proceedings.

## I. Introduction

Jurors in the United States are passive spectators of a "well-orchestrated jury trial" presented by lawyers and judges. B. Michael Dann, *"Learning Lessons" and "Speaking Rights": Creating Educated and Democratic Juries*, 68 Ind. L.J. 1229, 1235 (Fall 1993). Jurors act as "passive judges of what evidence the parties [choose] to present and which proof the law of evidence allow[s]." *Id.*

The earliest English juries were much different than present-day American juries. They played an active role in the trial process, often gathering evidence before trials began. *Id.* at 1232. The present-day model of jurors as passive listeners who choose between the parties' evidence is a product of a historical struggle, hundreds of years in duration, in which lawyers and judges sought to gain control over juries. *Id.* at 1234. It is, therefore, not surprising that "[t]he fear of losing total control over the trial and fact-finding processes prompts too many lawyers and judges to reject even the most modest of proposals" for jury reform. *Id.* at 1236–37.

However, within the last fifteen years, the model of treating jurors as passive spectators has been subject to significant criticism. Controversial acquittals, such as those in the O.J. Simpson and Rodney King cases, raised questions about the effect of bias on the criminal justice system, and spurred calls for jury reform. *See* Valerie P. Hans, Paula L. Hannaford & G. Thomas Munsterman, *The Arizona Jury Reform Permitting Civil Jury Trial Discussions: The Views of Trial Participants, Judges, and Jurors*, 32 U. Mich. J.L. Reform 349, 350 (Winter 1999); Natasha K. Lakamp, *Deliberating Juror Predeliberation Discussions: Should California Follow the Arizona Model?*, 45 UCLA L.Rev. 845, 848 & n. 9 (Feb.1998).

It is not my intent to take any position on those well-known acquittals. Rather, my attention is drawn, for the purposes of this case, to certain observations that commentators made about the jury system in general in the wake of the calls for jury reform flowing from those verdicts. For example:

> Chief Judge Warren Urbom of the District of Nebraska has succinctly described the way we treat jurors: "Jurors are rarely brilliant and rarely stupid, but they are treated as both at once." We expect jurors to remember and understand brilliantly the facts and the law of complex cases, but often we think them too stupid to be trusted to take notes, ask questions, and in other ways take an active part in the acquisition and management of the information necessary to render an informed verdict.

William W. Schwarzer, *Reforming Jury Trials*, 1990 U. Chi. Legal. F. 119, *reprinted in* 132 F.R.D. 575, 590 (1991) (footnote omitted).

## II. Social Science Research

The commentators urging jury reform considered substantial social science research that raised questions about whether the enforced passivity of American juries is productive. For example, one observer commented that American juries are *excessively* passive, which "interferes with learning and reduces opportunities for jurors, individually and collectively, to perform to their potential as community representatives and decision makers in trials of criminal and civil cases." Dann, 68 Ind. L.J. at 1236.

Such interference with learning creates real problems. Obstacles to jury comprehension "produce trials which leave jurors floundering in a mass of disconnected and obscure

evidence." Schwarzer, 132 F.R.D. at 576. Jurors confused by a lack of comprehension lose interest in the trial process. Dann, 68 Ind. L.J. at 1241.

Concerns like these led reformers to a large and significant body of social science research about how human beings process information and learn. *See, e.g., id.* at 1241–44 & nn. 83–103. This research indicates that jurors are "active decision makers," "[r]ather than the mythical blank slates who wait until the close of a trial to decide a verdict." Hans, 32 U. Mich. J.L. Reform at 351. Indeed,

> studies consistently disclose that "the juror is not a passive and altogether accurate encoder of information who suspends judgment until the end of the case." Behavioral research reveals that a "juror's natural tendency is to actively process information as it is received as well as afterward, thus forming tentative judgments about evidence" before deliberation. In a survey of criminal jurors, approximately 57% of the jurors stated they made up their mind prior to deliberations. In another study examining 783 civil and criminal jurors, 71% admitted they began deciding the case before retiring for deliberations. In fact, only a quarter of the jurors polled (26%) stated they retained an open mind throughout the trial and only began to reach a decision about the outcome of the case after deliberating with their colleagues.

Lakamp, 45 UCLA L.Rev. 845 at 853–54 (footnotes omitted) (quoting Dann, 68 Ind. L.J. at 1263, and William H. Carlile, *Power to the Jurors,* Christian Sci. Monitor, Feb. 22, 1996, at 1).

Further, critics of the passive juror model argue that it

> flies in the face of what studies about adult learning have proven. The educational model of learning, in contrast to the legal model, has demonstrated conclusively that active learners are better learners. [The educational model] . . . recognizes the reality that jurors bring with them their own frames of reference. The existence of these frames of reference underscores the need to have continuous feedback and the need to provide a legal frame of reference as early in the trial as possible.

Jacqueline A. Connor, *Jury Reform: Notes on the Arizona Seminar,* 1 J. Legal Advoc. & Prac. 25, 25–26 (1999).

## III.    Implementing Reform in Civil Cases

This compelling body of research prompted reforms. Arizona was the first state to act, appointing a commission to study the problem. The commission's report, issued in 1994, stated that, according to this research, "limitation of all discussions among trial jurors and the accompanying assumption that jurors can and do suspend all judgments about the case are unnatural, unrealistic, mistaken and unwise." Arizona Supreme Court Committee on More Effective Use of Juries, *Jurors: The Power of 12* at 97 (1994).

To address this problem, the Arizona Supreme Court issued Ariz. R. Civ. P. 39(f), which states that, in civil cases, jurors

> shall be instructed that they will be permitted to discuss the evidence among themselves in the jury room during recesses from trial when all are present, as long as they reserve judgment about the outcome of the case until deliberations commence. Nothwithstanding the foregoing, the jurors' discussion of the evidence among themselves during recesses may be limited or prohibited by the court for good cause.

At least three empirical follow-up studies have been conducted, which all provided evidence that allowing jurors to engage in predeliberation discussions under this rule *improved* the trial process. The first study, in 1996, surveyed Arizona trial court judges. The results indicated that the benefits of predeliberation discussions outweighed the concerns. Jurors were more alert and happy; they understood the case better; they reached verdicts quicker; and allowing predeliberation discussions did not seem to benefit one party over the other. Lakamp, 45 UCLA L.Rev. 845 at 871–73.

The second study sent surveys to jurors, judges, attorneys, and litigants who had participated in about 160 civil trials in 1997 and 1998. A high percentage of jurors and

judges thought that jurors' comprehension of the evidence improved, and that predeliberation discussions contributed to that improvement. Further, about seventy percent of the judges did not think that allowing jurors to discuss the case before the presentation of evidence had been concluded resulted in the jurors reaching premature decisions about a verdict. Hans, 32 U. Mich. J.L. Reform at 367, 371–72.

The third study videotaped all juror discussions and deliberations in about fifty civil trials conducted between 1998 and 2002. This study showed that deliberations were shorter; jurors understood expert testimony better; jurors were better able to clarify evidence and understand it accurately; the judge would have reached the same result as the jury in ninety percent of the cases; and, perhaps most important for the discussion here, there was no evidence that predeliberation discussions favored the plaintiff. Shari Seidman Diamond et al., *Juror Discussions During Civil Trials: Studying an Arizona Innovation,* 45 Ariz. L.Rev. 1, 62, 63–64, 71 (Spring 2003).

Colorado quickly followed Arizona's lead. In 1996, our supreme court established the Committee on the Effective and Efficient Use of Juries in Colorado, which was tasked with studying the jury system here and recommending ways in which communication with jurors could be improved. This process produced a series of reforms that became effective in our state on January 1, 1999. These included allowing jurors to take notes; providing them with trial notebooks; allowing them to ask questions of witnesses under the court's careful supervision; and, in a pilot project in civil cases, allowing jurors to engage in predeliberation discussions. Rebecca L. Kourlis & John Leopold, *Colorado Jury Reform,* 29 Colo. Law. 21 (Feb.2000).

Surveys of jurors participating in the 53 civil jury trials involved in the project reported that 93% of the jurors thought that predeliberation discussions assisted them in understanding the evidence and avoiding confusion; and, although about 14% of the jurors reported that they thought discussions held during the trials encouraged jurors to reach a final decision before the trials' end,

62% of the jurors emphatically disagreed with this contention. *Id.* at 22.

As a direct result of these conclusions, jurors in Colorado are now instructed about discussions during a civil trial:

> You may discuss the evidence during the trial, but only among yourselves and only in the jury room when all of you are present.

> You must not, individually or as a group, form final opinions about any fact or about the outcome of this case until after you have heard and considered all of the evidence, the closing arguments, and the rest of the instructions [the judge] will give you on the law. Keep an open mind during the trial. Form your final opinions only after you have discussed this case as a group in the jury room at the end of the trial.

CJI–Civ. 1:4 n. 2 (2000).

The idea of allowing predeliberation discussions in civil cases has spread even further. *See* Ind. Jury R. 20(a)(8) ("jurors ... are permitted to discuss the evidence among themselves in the jury room during recesses from trial when all are present, as long as they reserve judgment about the outcome of the case until deliberations commence"); N.D. R. Ct. 6.11(a) ("In a civil case, the court may, without objection, allow the jury to engage in predeliberation discussion."); American Bar Association, Principles for Juries and Jury Trials 13(F), *available at* http://www.abanet.org/juryprojectstandards/ principles.pdf at 20 ("Jurors in civil cases may be instructed that they will be permitted to discuss the evidence among themselves in the jury room during recesses from trial when all are present, as long as they reserve judgment about the outcome of the case until deliberations commence.").

## IV. Criminal Cases

The idea of allowing jurors to discuss the evidence in the course of civil cases before they deliberate has not yet been transferred to criminal cases. *But see* David A. Anderson, *Let Jurors Talk: Authorizing Pre–Deliberation Discussion of the Evidence During Trial,* 174 Mil. L.Rev. 92, 121–22 (Dec.2002) (recommending that predelibera-

tion discussions be authorized in criminal cases in military courts, partially because the Sixth Amendment right to trial by jury does not apply to the military). As the majority accurately points out, there are many criminal cases that conclude that predeliberation discussions constitute constitutional error.

For example, in *Winebrenner v. United States*, 147 F.2d 322, 328 (8th Cir.1945), the circuit court analyzed the prejudice that it perceived flowed from a jury that, before the trial has ended, discusses the evidence it has heard:

> If ... the jurors may discuss the case among themselves, either in groups of less than the entire jury, or with the entire jury, they are giving premature consideration to the evidence. By due process of law is meant "a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial." The jury should not discuss the case among themselves because, first, they have not heard all of the evidence; second, they have not heard the instructions of the court as to how this evidence is to be considered by them, and neither have they heard the arguments of counsel.

This rationale has been adopted, partially or completely, by almost all courts that have evaluated whether predeliberation discussions are error in criminal cases. *See generally* Dale R. Agthe, Annotation, *Propriety and Effect of Jurors' Discussion of Evidence Among Themselves Before Final Submission of Criminal Case*, 21 A.L.R.4th 444 (1983) (collecting cases). Representative of the rationale of many of these cases, the Pennsylvania Supreme Court concluded that an instruction allowing the jurors to discuss the case before all the evidence was presented violated the defendant's right to a fair and impartial jury, contrary to the Sixth Amendment. *Commonwealth v. Kerpan*, 508 Pa. 418, 420–24, 498 A.2d 829, 830–32 (1985).

In Colorado, a division of this court reached a similar result, primarily relying upon *Winebrenner* and *Kerpan*. *People v. Preciado–Flores*, 66 P.3d 155, 165–67 (Colo. App.2002). The division identified five reasons why predeliberation discussions by jurors are improper:

- Premature discussions interfere with the goal of decisions reached by collective deliberation.
- Jurors who express preliminary opinions to other jurors will become locked into their positions and, as a result, be less likely to be open-minded when formal deliberations begin.
- Discussions that occur before the defendant has an opportunity to present a defense case will impinge upon the defendant's right to a fair and impartial trial.
- The burden of proof will be shifted to defendants to change the minds of jurors who have prematurely decided the case.
- Predeliberation discussions are not informed by the instructions, and, therefore, they occur in a vacuum without the law's guidance.

*Id.* at 165; *see also People v. Baird*, 66 P.3d 183, 190–91 (Colo.App.2002).

### V. Analysis

It is my position that cases such as *Winebrenner*, *Kerpan*, and *Preciado–Flores* are based on a priori assumptions about how human beings obtain and process information, which, as demonstrated above, have been rebutted by substantial social science research. I submit that this research refutes the reasons that the division relied upon in *Preciado–Flores* to conclude that predeliberation discussions were improper.

Predeliberation discussions promote, rather than discourage, group decision making. If proper instructions are given, such discussions can deter jurors from locking in their positions, because the jurors remind one another of the need to follow the court's instructions, and to keep an open mind until their deliberations begin. Kourlis, 29 Colo. Law. at 22; Diamond, 45 Ariz. L.Rev. at 31–32; Hans, 32 U. Mich. J.L. Reform at 367, 371–72.

Predeliberation discussions do not encourage premature judgments. Rather, such discussions may encourage jurors to keep their minds open. Jessica L. Bregant, Note, *Let's Give Them Something to Talk About: An Empirical Evaluation of Predeliberation*

*Discussions,* 2009 Univ. Ill. L.Rev. 1213, 1223–25; Diamond, 45 Ariz. L.Rev. at 65. One commentator has observed that "[i]t is possible that a juror may be less prone to form and hold to an early opinion if he or she hears that others view the evidence differently." Schwarzer, 132 F.R.D. at 594.

Predeliberation discussions do not undermine the plaintiff's burden of proof or disadvantage defendants. Diamond, 45 Ariz. L.Rev. at 52, 63; Lakamp, 45 UCLA L.Rev. at 866–67, 871–73.

> [A]lthough predeliberation discussions would enable jurors to discuss the evidence before the defendant's case begins, such conversations would help to equalize the possible benefits either party would have obtained without these discussions. The end result would likely be a final decision based upon the actual evidence rather than a bias formed early in the trial.

Lakamp, 45 UCLA L.Rev. at 867.

Jurors who are given instructions before the presentation of evidence begins understand the evidence better. Bregant, 2009 Univ. Ill. L.Rev. at 1230–31. Crim. P. 24(a)(2)(iv)-(v) and (5), which were amended effective January 1, 1999, as a result of the jury reform committee's recommendations, require the trial court (1) to inform the jury panel when first brought to the courtroom of the nature of the case "using applicable instructions if available," and to explain "[g]eneral legal principles," such as the burden of proof, the definition of reasonable doubt, and the elements of charged offenses; and (2) once the jury is impaneled, to explain, in more detail, general legal principles, case specific legal principles, and definitions of special or technical terms. Therefore, predeliberation discussions would occur in criminal cases in Colorado with an understanding of relevant legal principles.

Allowing jurors to engage in predeliberation discussions also provides palpable benefits. Jurors understand the evidence better, they are less confused, and, in some circumstances, predeliberation discussions convince jurors to alter or reverse preliminary decisions about the case. *E.g.,* Diamond, 45 Ariz. L.Rev. at 62, 63–64, 71; Hans, 32 U. Mich. J.L. Reform at 367, 371–72.

The wealth of general social science research concerning how people learn information, plus the specific research concerning predeliberation discussions, convinces me that allowing such discussions does not impinge upon a defendant's Sixth and Fourteenth Amendment right to a fair and impartial jury because such discussions do not result in the harmful effects identified by cases such as *Winebrenner, Kerpan,* and *Preciado–Flores.* If anything, I see such discussions as enhancing that right.

Therefore, I must respectfully disagree with those appellate decisions that conclude that allowing predeliberation discussions in criminal cases is constitutional error under the Sixth and Fourteenth Amendments. I submit that those cases have as their foundation assumptions about jurors that have been demonstrated to be inaccurate. The existence of constitutional error should not be predicated on inaccuracy.

My conclusion is reinforced by four additional factors. First, research indicates that jurors often form opinions about the case and talk about it before final deliberations. *E.g.,* Lakamp, 45 UCLA L.Rev. 845 at 853–54. Research further demonstrates that allowing predeliberation discussions can channel these normal human behavioral tendencies in a manner that improves the quality and fairness of deliberations. *E.g.,* Diamond, 45 Ariz. L.Rev. at 62, 63–64, 71; Hans, 32 U. Mich. J.L. Reform at 367, 371–72. As the Arizona committee that studied jury reform observed, research shows that the "limitation of all discussions among trial jurors and the accompanying assumption that jurors can and do suspend all judgments about the case are unnatural, unrealistic, mistaken and unwise." Arizona Supreme Court Committee, *Jurors: The Power of 12* at 97.

Second, in light of what I see as the absence of an adverse impact on the fairness and impartiality of juries in criminal cases, I cannot understand how a trial procedure expressly allowed in civil cases in Colorado can form the basis for finding constitutional error in criminal cases.

Third, as required in civil cases in Colorado, in this case the trial court repeatedly

cautioned the jurors that, although they could engage in predeliberation discussions, they were to maintain an open mind until the case was finished. At various times throughout the trial, the court told the jurors that (1) they were "directed not to form any firm conclusions, because obviously until the case is closed, [they] will not have heard all the evidence"; (2) they should not "draw any firm conclusions about what [they have] heard"; (3) they should "[k]eep an open mind all the way through the trial and draw [their] conclusions only at the conclusion of the case"; and (4) they must "keep an open mind, because while [they have] heard all the evidence, [they] haven't actually had a chance to review some of it, and [they] haven't heard closing arguments." Therefore, the jury was clearly informed, consistently with CJI–Civ. 1:4, that predeliberation discussions were not to serve as the deliberations themselves. *See United States v. Lemus*, 542 F.2d 222, 223–24 (4th Cir.1976) (although instructing a jury that it may engage in predeliberation discussions would jeopardize a defendant's right to a fair trial "in the abstract," any error was harmless because the court also instructed the jury to keep an open mind).

Fourth, the jury in this case did not engage in any misconduct: if it engaged in predeliberation discussions, it was simply following the trial court's instructions. Further, the jury was not exposed to extraneous information or outside influences, which are more likely to be prejudicial than predeliberation discussions. *See United States v. Williams–Davis*, 90 F.3d 490, 505 (D.C.Cir. 1996) ("The probability of some adverse effect on the verdict [as a result of predeliberation discussions] is far less than for extraneous influences.").

Therefore, in my view, the analysis and procedures found in cases interpreting and applying CRE 606(b) are inapposite. Under the facts of this case, the focus should be, I suggest, on the propriety of the court's instruction, and the tools we employ in that analysis should be the standard ones used to determine the presence and effect of instructional error.

I would conclude that the trial court's instruction concerning predeliberation discus-

sions was not error under the Sixth and Fourteenth Amendments. In reaching this result, I recognize that the division in *Preciado–Flores* observed that (1) Crim. P. 24(f) does not expressly bar trial courts from permitting jurors to engage in predeliberation discussions; but, (2) the pattern criminal instruction concerning jurors' conduct during trial, CJI–Crim. 1:04 (1983), states that jurors are not to "discuss the case either among [themselves] or with anyone else during the course of the trial." *Preciado–Flores*, 66 P.3d at 166.

Although the trial court departed from the pattern instruction here, it is my view that the court's repeated emphasis that the jurors keep an open mind resulted in jurors who had been accurately informed of the law. Therefore, there was no error. *See People v. Howard*, 89 P.3d 441, 447 (Colo.App.2003).

Further, CJI–Crim. 1:04 dates from the early 1980s. It was, therefore, drafted before the social science research to which I refer became widely available in the legal community, and before the reforms that produced the changes in civil cases represented by CJI–Civ. 1:4.

Moreover, even assuming, for purposes of argument, that instructing the jury contrary to CJI–Crim 1:04 constituted error, I would conclude, as indicated above, that such error did not have a constitutional basis. Therefore, I would hold that this nonconstitutional error did not substantially influence the verdict or affect the trial's fairness, particularly because the trial court repeatedly instructed the jurors to keep an open mind. *See Krutsinger v. People*, 219 P.3d 1054, —— (Colo.2009)(discussing test for nonconstitutional error). I would, as a result, affirm defendant's conviction.